UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br>　　v.<br>LEONARD BERNOT,<br><br>　　　　　Defendant. | No. 2:08-CR-00093-KJM-4<br><br>ORDER |

    Defendant Leonard Bernot, proceeding pro se, moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel. Mot., ECF No. 1537 (incorrectly submitted under 28 U.S.C. § 2254). The government opposes. Opp'n, ECF No. 1551. Bernot filed a reply. Reply, ECF No. 1552. The court submitted the matter without oral argument. ECF No. 1544. For the reasons discussed below, the court DENIES Bernot's motion.

I. BACKGROUND

    In February 2008 and then again in February 2010, a grand jury returned indictments charging Bernot with conspiracy to commit mail fraud and mail fraud. ECF Nos. 1, 303. The court set a trial date in July 2011. ECF No. 428.

    At the trial confirmation hearing on June 16, 2011, Bernot pleaded guilty to conspiracy to commit mail fraud. ECF No. 459. The court took care to assure Bernot was aware

there was no plea deal in place. Plea Hr'g Tr. at 5:8–10, ECF No. 908. Additionally, the court advised Bernot of the charge to which he was pleading and the maximum penalties afforded by statute. *Id.* at 9:15–10:21. Under oath, Bernot affirmatively confirmed the decision to plead guilty was his own, that he had a full opportunity to discuss any defenses with his attorney, Bruce Locke, and that he or a family member or close friend had not been threatened to induce a plea of guilty. *Id.* at 7:15–8:5.

In September 2013, the government and Locke filed various stipulations regarding facts and exhibits related to sentencing. Stipulations, ECF No. 858. Bernot had worked for Head Financial Services ("HFS") and was involved in targeting individuals in financial distress. *See* Evidentiary Findings at 4, ECF No. 939. The parties stipulated that Ted Garfinkle's home had been transferred to Bernot in late 2004, the home was foreclosed upon, and the bank's resulting loss was between $224,184 and $235,500. Stipulations at 3:7–10, 3:13–14, 2:26–27.

In October 2013, prior to Bernot's sentencing, the court held a three-day evidentiary hearing to resolve objections to the Pre-Sentence Report ("PSR"). ECF Nos. 863, 872–73. During the first day, Locke cross-examined the government's witnesses, including Mr. Garfinkle. October 1, 2013 Hr'g Tr. at 63:14–77:20, 84:1–86:8, ECF No. 868 (cross and re-cross examinations of Mr. Garfinkle). The court found Bernot defrauded the Garfinkles and that they were vulnerable victims. Evidentiary Findings at 14–15.

On December 15, 2014, the court imposed an eighteen-month sentence of imprisonment and a $20,000 fine. ECF No. 1132. On April 2, 2015, after a restitution hearing, the court ordered Bernot to pay $316,744.49 in restitution to the Garfinkles based on their loss. ECF No. 1328 at 4.

After sentencing, Bernot filed a direct appeal with the Ninth Circuit. ECF No. 1334. The appeal raised several claims related to this court's calculation of the sentencing guidelines range, application of the statutory sentencing factors and the imposition of restitution. *Id.* A three-judge panel of the Ninth Circuit issued a memorandum denying Bernot's claims. *United States v. Bernot*, 672 F. App'x 725 (9th Cir. 2016).

/////

Bernot, proceeding pro se, moves to vacate his sentence. Mot. Though incorrectly filed under 28 U.S.C. § 2254, this court uses its discretion to construe the motion as filed under 28 U.S.C. § 2255 and decide Bernot's motion on its merits. Because the court denies Bernot's motion, the court need not address the government's alternative request to submit a declaration from defense counsel. *See* Opp'n at 1.

II. <u>LEGAL STANDARD</u>

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). The statute authorizes the sentencing court to grant relief if it concludes, as relevant here, that the sentence violated the Constitution. *Id.* Motions to vacate do not apply to requests to alter restitution or fines because, "[b]y its clear terms, § 2555 is applicable only to prisoners in custody claiming the right to be released." *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999).

The Sixth Amendment guarantees an individual the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Ineffective assistance of counsel claims entail a two-pronged analysis. *Strickland v. Washington*, 466 U.S. 668 (1984). First, the court determines whether the counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Second, the court determines whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

To determine whether counsel's assistance was ineffective, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. The complaining party must show there was "no reasonable basis" for the attorney's decision. *Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012). The "counsel must, at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client." *Seidel v. Merkle*, 146 F.3d 750, 755 (9th Cir. 1998) (citing *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994)). "Because we presume that the lawyer is competent to provide the guiding hand that the defendant needs . . . the burden rests on the

accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).

Counsel's deficient performance alone "does not warrant setting aside the judgment . . . if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. A "reasonable probability" that the result of the proceeding would have been different means "a probability sufficient to undermine confidence in the outcome." *Seidel*, 146 F.3d at 757. Effective assistance can be measured at all "critical stages of a criminal proceeding," including pretrial stages, *Lafler v. Cooper,* 566 U.S. 156, 165 (2012), the plea process, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), and at sentencing, *Lafler*, 566 U.S. at 165. *See also Glover v. United States*, 531 U.S. 198, 203 (2001) ("[A]ny amount of actual jail time has Sixth Amendment significance.").

III. <u>DISCUSSION</u>

Bernot petitions the court to vacate his conviction and sentence arguing his counsel: a) unreasonably recommended Bernot plead guilty to conspiracy to commit mail fraud; b) improperly stipulated to facts regarding loss without Bernot's permission; and c) inadequately investigated and cross-examined Mr. Garfinkle. *See* Mot. at 1.

A. <u>Counsel's Recommended Guilty Plea</u>

Bernot alleges his counsel unreasonably suggested he plead guilty to conspiracy to commit mail fraud. Although counsel repeatedly recommended Bernot plead guilty to one count of mail fraud, about half an hour before hearing he pressured Bernot to plead guilty to conspiracy to commit mail fraud instead. *Id.* at 7–8. Bernot alleges counsel falsely suggested his plea would "help with the prosecutor and . . . the case against Charles Head," a co-defendant, whereas in fact "it emboldened the prosecutor to demand several more years by attempting to attribute all of Chares Head['s conduct to Bernot]." *Id.* at 8.

When assessing a guilty plea, the salient question is whether the defendant understood what he was pleading to and whether that plea was voluntary in nature. *McMann v. Richardson*, 397 U.S. 759, 767 (1970). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 75 (1977). Even so, if an individual

4

can prove his counsel materially misrepresented consequences, and this prejudiced his decision to plead guilty, this could be considered ineffective assistance of counsel. *Padilla v. Kentucky*, 559 U.S. 356, 386 (2010) (counsel's failure to advise defendant his plea subjected him to automatic deportation after assuring him of opposite was unreasonable and likely caused prejudice). When reviewing whether a guilty plea was reasonable, the court should look beyond merely the defendant's chances of acquittal, providing a "case-by-case examination of the totality of the evidence." *Lee v. United States*, 137 S. Ct. 1958, 1966 (2017) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)). Where a defendant is informed by the court of potential sentencing outcomes, "a plea of guilty is not vitiated by the claim that counsel erred in his advice." *United States v. Boniface*, 601 F.2d 390, 393 (9th Cir. 1979).

Here, Bernot does not claim to have misunderstood the potential sentencing results for pleading guilty as he did to the conspiracy count. *See* Mot. at 8:14–18. Nor could he, because the court explained the consequences of pleading guilty to a felony and specifically of pleading guilty to conspiracy to commit mail fraud. Plea Hr'g Tr. at 8:18–9:7, 9:15–10:9 (explaining count one carried a maximum twenty-year sentence); *see also Cascio v. United States*, 429 F.2d 581, 582 (9th Cir. 1970) (denying ineffective assistance of counsel claim where record made clear petitioner was aware of the maximum sentence). Bernot instead asserts his attorney claimed pleading guilty to conspiracy might help his case, and the attorney unduly pressured him into his plea. Mot. at 9:2–7. Bernot has provided no evidence that counsel materially misrepresented the consequences of his plea: Bernot faced a maximum penalty of twenty years in prison and received an eighteen-month sentence; Bernot has provided no evidence that he would have received a lighter sentence if he had instead pled guilty to mail fraud alone, which carried with it the same maximum sentence and a likely identical guideline range sentence. *See* 18 U.S.C. §§ 1341, 1349; U.S.S.G. Appx. A; U.S.S.G. § 2X1.1(a).[1] Bernot's assertion of coercion is belied by the record.

---

[1] Whether mail fraud would carry the same guideline range as conspiracy to commit mail fraud depends on whether Bernot would be liable for the acts of his co-defendants as "relevant conduct." U.S.S.G. §§ 2B1.1(a), 1B1.3(a). "Relevant conduct" is broadly defined to include all acts and omissions within the scope of the jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable in connection with that criminal activity. U.S.S.G. §§ 1B1.3(a)(1)(B)(i)–(iii). Based on these definitions, the government argues Bernot would have faced an identical guideline range, Opp'n at 5, and Bernot does not argue otherwise.

At hearing, Bernot affirmed he was aware his plea was offered without any agreement with the government, that he had a full opportunity to discuss his case with his attorney, and that it was entirely his own, voluntary decision to enter a plea of guilty. Plea Hr'g Tr. at 5:8–10, 7:15–8:5. Bernot's conclusory allegations after the fact of undue pressure are insufficient. *See Cascio*, 429 F.2d at 582 (rejecting "loose and vague claims" of coercion).

In sum, Bernot has not overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Nor has he shown, even assuming counsel erred, that such errors altered the result of the proceeding. *Id.* at 694. The court DENIES Bernot's motion on the basis of counsel's recommendation that Bernot plead guilty to conspiracy to commit mail fraud.

B. <u>Counsel's Stipulation</u>

Bernot next alleges his counsel stipulated to a $240,000 loss to the bank prior to sentencing, which was unreasonable and executed without his approval. Mot. at 9:13–15. Initially, to the extent Bernot challenges the amount of restitution he was required to pay the Garfinkles, his § 2255 motion does not provide a remedy for such a challenge. *Kramer*, 195 F.3d at 1130 ("By its clear terms, § 2555 [sic] is applicable only to prisoners in custody claiming the right to be released."); *United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002) (relief under § 2255 not available to challenge restitution even if a defendant simultaneously seeks release from custody). Bernot also argues the stipulated loss impacted the guidelines calculation and provided the basis for his term of imprisonment, and that the government could not have otherwise met its burden to prove any loss. Mot. at 9; Reply at 4.

Generally, "mere criticism of a trial tactic is not sufficient to support a charge of ineffective representation," *United States v. Ferreira-Alameda*, 815 F.2d 1251 (9th Cir. 1986), a lawyer's stipulation to evidentiary facts does not necessarily demonstrate incompetency of counsel, *United States v. Gray*, 626 F.2d 102, 106 (9th Cir. 1980), and counsel may enter stipulations even over defendant's objection, *Allerdice v. Ryan*, 395 F. App'x 449, 452 (9th Cir. 2010). Here, Bernot has not shown the government would not have easily proven the loss to which counsel stipulated. In a mortgage fraud case, the government can ordinarily prove

6

guidelines loss by (1) identifying the reasonably foreseeable harm to the bank for the fraudulent loan, which is ordinarily the principal loan amount, and (2) subtracting "credit against loss," which is the amount the bank actually recovered such as from sale of the property. *United States v. Morris*, 744 F.3d 1373, 1375 (9th Cir. 2014). During the second day of evidentiary hearing, the government presented evidence compiled from business and public records to determine the outstanding balance on the loan, the initial down payment and the foreclosure sales price. October 17, 2013 Hr'g Tr. at 10–14 (IRS special agent Chris Fitzpatrick describing Government Exhibits 1, 2, 2-A, 2-B, and 2-C), ECF No. 878. The parties stipulated to the accuracy and admissibility of these exhibits, Stipulations at 2:2–8, which Bernot does not challenge here, *see* Mot. And each of those exhibits were received in evidence. October 1, 2013 Hr'g Tr. at 4[2]. On the basis of these documents, the government could show the final loss amount. Particularly given that the government needs to show guidelines loss by only a preponderance of the evidence, *United States v. Treadwell*, 593 F.3d 990, 1000 (9th Cir. 2010) (citing *United States v. Armstead*, 552 F.3d 769, 776 (9th Cir. 2008)), Bernot has not provided any basis to conclude his counsel should have picked a battle over the loss amount or that it would have mattered had he done so. In other words, Bernot has shown neither inadequate assistance nor prejudice. The court DENIES Bernot's claim on the basis of counsel's stipulation.

C. Counsel's Investigation and Cross-Examination

Bernot's final allegation centers on the claim that his counsel ineffectively researched and cross-examined Mr. Garfinkle. Mot. at 10:13–21. Had his counsel adequately researched Mr. Garfinkle, Bernot argues, he would have seen Mr. Garfinkle was the vice president of various firms, firmly concluded Mr. Garfinkle was "very experienced" with contracts and not a vulnerable victim and pressed this point at hearing. *Id.*

1. Counsel's Cross-Examination

Bernot's claim lacks merit because the evidence shows Bernot's counsel did in fact elicit Mr. Garfinkle's understanding of the contract he signed:

---

[2] Though these exhibits were admitted, they are not in the record.

7

> Defense: …you would have reviewed all of the papers before your [wife] signed them; correct?
>
> Garfinkle: Yes.
>
> Defense: Okay. Looking at the first page of the, Acknowledgement by Seller, if you look at paragraph 4 where it says: "Seller understands that the Equity Purchase Agreement, which seller has entered into with the purchaser, is not a loan and is not a mortgage. Pursuant to the terms of the Equity Purchase Agreement, seller is selling his/her entire interest in the property to purchaser." Do you understand what that says?
>
> Garfinkle: I see that, yes.
>
> Defense: Do you have any doubt as to what that means?
>
> Garfinkle: I don't have any doubt what that means . . .
>
> . . .
>
> Defense: Okay. And that paragraph 4 is very clear that the person who was signing this document is selling their home to the purchaser; right?
>
> Garfinkle: That's very clear, yes.

October 1, 2013 Hr'g Tr. at 70:20–25, 71:1–15, 72:15–18.

Bernot's attorney asked Mr. Garfinkle to confirm he understood the contract and that it was clear. Though Bernot's counsel did not specifically query Mr. Garfinkle's specific professional history, allegations that there could have been "a better defense fails to overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Mancuso v. Olivarez*, 292 F.3d 939, 954 (9th Cir. 2002). Counsel's questioning here was reasonable and not "so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687.

### 2. The Garfinkles' Status

Even had Bernot's counsel made the arguments Bernot now suggests, there is no evidence he would have obtained a different result. The United States Sentencing Guidelines § 3A1.1 defines vulnerable victim as extending to circumstances in which a person was "(1) a victim was either (a) unusually vulnerable due to age, physical or mental condition, or (b) otherwise particularly susceptible to the criminal conduct, and (2) the defendant knew or should

have known of such vulnerability or susceptibility." *United States v. Castellanos*, 81 F.3d 108, 110 (9th Cir. 1996) (citing U.S.S.G. § 3A1.1). The defendant need not have specifically targeted his victim for their vulnerability if he "should have known" that the victim was vulnerable. *United States v. O'Brien*, 50 F.3d 751, 755 (9th Cir. 1995).

Being wealthy and sophisticated does not preclude a finding of vulnerability. *See United States v. Matsumaru*, 244 F.3d 1092, 1096 (9th Cir. 2001). In *Matsumaru*, an attorney was convicted for wire fraud, visa fraud and establishing a commercial enterprise for purpose of evading immigration laws. *Id.* at 1096. The defendant defrauded foreign clients, all of whom were established and sophisticated businessmen. *Id.* at 1097. Even so, the court held the businessmen were fairly classified as vulnerable victims because they were targeted for their specific inexperience with U.S. immigration laws and business practices and their inability to read or write in English. *Id.* at 1107–08.

Similarly here, being the vice president of various firms and having a background in marketing management does necessarily provide expertise in unrelated fields such as real estate and mortgage and contract law. It is unreasonable to assume that Mr. Garfinkle's alleged experience negotiating unrelated contracts informed his knowledge as a homeowner in financial distress. Bernot claims Mr. Garfinkle was aware he was losing his home. Mot. at 10:17. If anything though, this factor strengthens Mr. Garfinkle's vulnerable status: Being certain that a person will lose his residence adds stress and susceptibility creating an individual "more likely than other members of the general population to become a victim to the particular crime at issue." *Castellanos*, 81 F.3d at 110; *see United States v. Peters*, 962 F.2d 1410, 1416–18 (9th Cir. 1992) (holding vulnerable-victim enhancement proper where defendant targeted those with credit problems in credit card fraud scheme); *United States v. Holmes*, 60 F.3d 1134, 1136–37 (4th Cir. 1995) (persons with poor credit ratings and losing their homes generally more desperate and susceptible to predatory loans). As the court noted in finding Bernot had targeted a vulnerable victim, after seeing Mr. Garfinkle on the stand, the HFS working protocol was to target homeowners in financial distress who had already received a notice of default. Evidentiary

Findings at 15. Bernot has provided an inadequate basis to conclude counsel could have prevented the court's finding the Garfinkles qualified as vulnerable victims.[3]

In sum, Bernot has not shown that counsel inadequately challenged Mr. Garfinkle's status as a vulnerable victim or that it would have mattered had counsel done more. The court DENIES Bernot's motion on the basis of counsel's investigation and examination of Mr. Garfinkle.

IV. CONCLUSION

Bernot has not met his burden to show his counsel acted unreasonably or that Bernot suffered prejudice as a result. The court DENIES the motion to vacate sentence.

IT IS SO ORDERED.

This order resolves ECF No. 1537.

DATED: September 19, 2017.

_____
UNITED STATES DISTRICT JUDGE

---

[3] When faced with the question previously, the Ninth Circuit upheld this court's conclusion that the Garfinkles were particularly vulnerable victims of Bernot's conduct. *See Bernot*, 672 F. App'x at 725 ¶ 1.